CENTRAL STATE BANK, a Michigan Banking Corp., Appellant,

v.

Robert BLOOM, Acting Comptroller of the Currency, of the United States.

No. 77–1978.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1978.

Decided April 6, 1979.

Richard B. Foster, Jr., Lansing, Mich., with whom Meyer Eisenberg, Leonard J. Rubin and J. Kent Jarrell, Washington, D. C., were on brief, for appellant.

Linda Jan S. Pack, Atty., Dept. of Justice, Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Barbara Allen Babcock, Asst. Atty. Gen. and Ronald R. Glancz, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before McGOWAN and WILKEY, Circuit Judges, and GASCH,* United States District Court Judge for the District of Columbia.

Opinion for the court filed by GASCH, District Judge.

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

GASCH, District Judge:

Appellant, a Michigan state-chartered banking association, has appealed from a district court order upholding a decision of the Comptroller of the Currency ("the Comptroller"), which approved the application of Michigan National Bank–Grand Traverse ("MNB–Grand Traverse") to establish a branch bank in Benzonia, Michigan. For the reasons stated herein, we vacate the decision of the Comptroller and remand the matter for further consideration in light of subsequent actions taken by the Board of Governors of the Federal Reserve System.

## I.

On July 22, 1976, MNB–Grand Traverse filed an application with the Comptroller requesting permission to establish a branch bank at 1747 Benzie Highway, Village of Benzonia, Benzie County, Michigan.[1] MNB–Grand Traverse, whose main office is located in Traverse City, County of Grand Traverse, Michigan, is a national banking association and a subsidiary of Michigan National Corporation ("MNC"), a bank holding company. Appellant and six other financial institutions that compete with MNB–Grand Traverse challenged the application on the ground that MNB Grand Traverse was not a proper applicant for a branch bank.

The banking laws of Michigan permit the establishment of a branch bank in a county different from that of the parent bank only if the branch office is within twenty-five miles of the main office of the parent.[2] In challenging the application, appellant maintained that MNB Grand Traverse was not an independent national bank but rather was a de facto branch of another MNC affiliate, Michigan National Bank–Lansing ("MNB Lansing").

Although MNB Grand Traverse held a certificate issued by the Comptroller in 1975 establishing its de jure status as a national bank, appellant argued that MNB–Grand Traverse subsequently had been operated by MNB–Lansing as a branch bank and provided routine banking services to MNB–Lansing customers on a regular, systematic, and continuing basis by means of accommodation transfer services (ATS) that were offered throughout the MNC organization.[3]

---

1. The approval of the Comptroller is required under section 36 of the National Bank Act:
   A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restriction as to location imposed by the law of the State on State banks. . . .
   12 U.S.C. § 36(c) (1976).

2. Mich.Stat.Ann. § 23.710(171) [M.C.L.A. § 487.471] (1971) states:
   (1) With the written approval of the commissioner, any bank may establish and operate a branch or branches within a village or city other than that in which it was originally chartered if the village or city in which it is proposed to establish and operate a branch is located in the same county in which the parent bank has its principal office or, if not in

the county, then within 25 miles of the parent bank or in a contiguous county at a point more than 25 miles from the parent bank, if the county has no bank.
   A branch shall not be established in a city or village in which a state or national bank or branch thereof is then in operation. The commissioner shall not grant such approval unless he is satisfied as to the sufficiency of the capital and surplus of the bank, the necessity for the establishment of such branch or branches and the prospects of successful operation if established.
   (2) With the written approval of the commissioner, any bank may establish and operate a branch or branches within the limits of the city or village in which the bank is located if the commissioner is satisfied as to the necessity for the establishment of the branch or branches and the prospects of successful operation if established.

3. Under the ATS program, which was initiated in 1972, a customer of any MNC subsidiary bank (the bank of record) may effect at any of the other MNC subsidiary banks or their branches (the accommodating bank) a deposit to or withdrawal from any savings or checking account maintained at the customer's MNC bank of record. A customer also may effect

If this de facto interpretation were accepted, the proposed Benzonia office would violate Michigan branch banking laws because the main office of MNB–Lansing, the parent in fact, would be located 160 miles from the branch.

At appellant's request, a public hearing regarding the application was held on November 16, 1976. Each party was given the opportunity to present opening statements, testimony of witnesses, documentary exhibits, and to cross-examine witnesses. The hearing panel refused, however, to consider testimony or arguments pertaining to the de facto branch theory or MNB–Grand Traverse's relationship with other subsidiaries in the MNC holding company. This restriction was based on an asserted lack of jurisdiction over the internal structure of a bank holding company and the interrelationship of bank holding company subsidiaries. The Comptroller stated that these issues are committed to the exclusive primary jurisdiction of the Board of Governors of the Federal Reserve System. *See* 12 U.S.C. §§ 1841 *et seq.* (1976).

The record was held open after the hearing to allow all parties to file additional written submissions including post-hearing briefs. Based on this record, which included analysis and recommendations from his staff, the Comptroller approved the application on February 28, 1977. The MNB–Grand Traverse branch in Benzonia opened on March 15, 1977.

On March 18, 1977, appellant filed the present action in district court and sought declaratory and permanent injunctive relief on the ground that the Comptroller's approval of the Benzonia branch was unlawful because MNB–Grand Traverse was a de facto branch bank of MNB–Lansing. On July 27, 1977, the district court granted appellee's motion for summary judgment, holding that the approval was not arbitrary or capricious nor an abuse of discretion and that the Comptroller's decision was adequately explained and had a rational basis. Appellant then filed this appeal, alleging that the Comptroller incorrectly refused to consider the de facto status of MNB–Grand Traverse and that the district court also erred in failing to make a de novo determination on the legal issue of the bank's status under section 36 of the National Bank Act.

## II.

Throughout the administrative and judicial proceedings involving the Benzonia branch application, the Comptroller has taken the position that the branch banking issue raised by ATS and MNB's operations is reserved for the Federal Reserve Board. This view is in accord with the decision of the Supreme Court in *Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 419, 85 S.Ct. 551, 557, 13 L.Ed.2d 386 (1965). In that case the Court held "the statutory proceedings before the Board to be the sole means by which questions as to the organization or operation of a new bank by a bank holding company may be tested."

In its brief the Comptroller concedes that Central could, and in fact did, raise the issue of de facto branching even after failing to prevent the original establishment of MNB–Grand Traverse.[4] In 1977 appellant challenged an application by MNC to acquire MNB–Sterling, a proposed new bank, as a member of the bank holding company. After reviewing the de facto branching allegations, the Board on January 31, 1978, ruled as part of its decision on the application that the ATS services provided by subsidiary banks in the Michigan National or-

---

payments on any mortgage or installment loan extended to the customer by the customer's bank of record. *See* F.R.B. Order of January 31, 1978, J.A. at 115–16. Mechanically, the system functions through the creation by the accommodating bank of a separate and temporary "accommodation account" for a customer who wishes to perform a banking transaction at a location other than his bank of record. At the end of the business day all ATS transactions are cleared through two regional data processing centers and settlement of ATS transactions is made through correspondent balances maintained by each MNC bank at the other MNC banks. *Id.*

4. Brief for Appellee at 27.

ganization constituted branch banking in violation of section 36 of the National Bank Act, 12 U.S.C. § 36. The Sterling application was approved, however, on the condition that ATS services not be offered at the Sterling bank or to any of that bank's customers by any other MNC subsidiary.[5]

The legality of ATS services was also litigated in another forum. In May, 1977, the State of Michigan filed suit against MNC and its subsidiary banks alleging that the establishment and operation of ATS services caused MNC and its subsidiary banks to be engaged in illegal branch banking. *Kelley v. Michigan National Corp.,* C.A.No. 77–1240 (E.D.Mich.). On February 28, 1978, the Court granted plaintiff's motion for summary judgment and entered a preliminary injunction against the ATS program at all MNC subsidiaries. *See* J.A. at 133–47.

This decision and the Board's Order of January 31, 1978 are presently ˙on appeal before the United States Court of Appeals for the Sixth Circuit.[6] In its proceeding against the Federal Reserve Board, MNC stipulated that, subject only to its appeal rights, it would apply the Board's decision in the MNB–Sterling case on the branching issue to all MNC banks. Thus, the ultimate result reached in this litigation will determine the continuing availability of the ATS plan at MNB–Grand Traverse as well.

At the time the Comptroller considered and approved the Benzonia branch application, there was no final determination by the Board on the question whether ATS services constituted branch banking. Absent such a controlling decision, the Comptroller should have addressed the issue in order to decide the case before him. His failure to do so in this case requires that his order be vacated, and the case remanded to him for further consideration in light of the decision reached by the Board and presently under review.

*It is so ordered.*

---

5. F.R.B. Order of January 31, 1978, J.A. at 113.

6. *Kelley v. Michigan Nat'l Corp., appeal docketed,* No. 78–1195 (6th Cir. May 19, 1978); *Michigan Nat'l Corp. v. Board of Governors,*

*appeal docketed,* No. 78–3057 (6th Cir. February 1, 1978). Both cases have been fully briefed, but no date has yet been set for oral argument.